Priscilla M. FRIERSON, Plaintiff,

v.

Anne (Mrs. John L.) McINTYRE, Defendant.

Civ. A. No. 290.

United States District Court
W. D. Virginia, Lynchburg Division.

May 1, 1953.

and filed in the Clerk's Office within ten days of the date of judgment.

■ Plaintiff's counsel contend that defendant's motion should not be considered because not timely. However, I am of the contrary opinion. Fed.Rules Civ. Proc. rule 59(b), 28 U.S.C.A., provides:

"A motion for a new trial *shall be served* not later than ten days after the entry of the judgment." (Italics mine).

Rule 5(b) provides for service by mail, and concludes with the sentence, "Service by mail is complete upon mailing." Rule 5(d) provides:

"All papers after the complaint required to be served upon a party shall be filed with the court either before service or within a reasonable time thereafter."

The certificate upon defendant's motion shows that it was served by mailing on April 18, 1953, which was the tenth day after judgment, and it was received by the Deputy Clerk on Sunday, April 19th. It therefore seems clear to me that the service was within the ten days allowed by the Rule, and the filing in the Clerk's Office was "within a reasonable time after service upon the opposing party."

Considering first the plaintiff's motion, plaintiff therein moves the court to allow the judgment of $15,000 in her favor to stand as compensatory damages, and to impanel another jury to determine the amount of punitive damages. Plaintiff bases her motion upon the fact that the court refused to charge the jury on the subject of punitive damages and refused to permit the plaintiff to introduce in evidence a deposition of the defendant in which she claimed her privilege against self-incrimination and refused to testify on that ground.

■ Considering the second ground of the motion first, it was quite obvious that, there being nothing of probative value in defendant's depositions, the sole purpose of the plaintiff in seeking to introduce the deposition was to create prejudice against

Allen, Allen, Allen & Allen, Richmond, Va., for plaintiff.

T. Warren Messick, Roanoke, Va., and E. O. McCue, Charlottesville, Va., for defendant.

BARKSDALE, District Judge.

At the conclusion of a three-day trial of this case with a jury, on the evening of May 8, 1953, the jury returned a verdict for the plaintiff in the sum of $15,-000 and judgment was entered thereon. Both plaintiff and defendant have now filed motions for a new trial. As to plaintiff's motion, there can be no question of its timeliness, because it was both served upon counsel for the defendant

the defendant, or to have the jury draw the inference of guilt from the fact that defendant had claimed her Constitutional privilege. There was no contention that defendant was not within her rights in claiming her privilege. I overruled the motion to admit the deposition in evidence, because it seemed to me that the admission of the deposition in evidence would be, in effect, a deprivation of defendant's Constitutional privilege. In my opinion, counsel for plaintiff cited no authority sustaining their contention that the deposition was admissible, but it appeared to me that at least one of the cases cited by plaintiff's counsel constituted a definite holding adverse to plaintiff's contention.

As to the matter of punitive damages, plaintiff certainly did not include any specific prayer for punitive damages in her complaint. However, plaintiff did request the court to charge the jury as to punitive damages. On this subject, plaintiff's prayers are as follows:

"If you believe from the evidence that the defendant, Anne McIntyre, knowing Colonel Frierson to be the husband of the plaintiff, and intending to win his affections and engage his attentions for herself, bestowed her own attentions upon him, and encouraged him to visit her, or otherwise actively endeavored to entice the said Colonel Frierson away from the plaintiff, and succeeded in doing so, so that his wife thereby lost the society and companionship of her husband, then your verdict should be for the plaintiff; and you should at all events assess the damages sufficiently high to compensate her for her loss of the society and companionship of her husband, and for any grief or humiliation, which in your opinion she may have suffered. These damages are called compensatory damages. The court further instructs the jury that they may give other damages known as punitive damages, in addition to the compensatory damages above mentioned, *if in the opinion of the jury*

*the defendant acted maliciously in alienating the affections of plaintiff's husband, if you should find that she has so alienated them, and by maliciously in this sense is not meant personal ill-will or spite of the defendant for the plaintiff, but as here used, malice means the intentional doing of a wrongful act without justification or excuse;* and if you should find that the defendant has alienated the affections of the plaintiff's husband, and that it was intentionally done without justification or excuse, then you may, if you judge proper, award also punitive damages by way of punishment, that others may be deterred from like acts. And if you should judge proper to award punitive damages, then in assessing them you may consider the wealth of the defendant, for as punitive damages are awarded by way of punishment and for the sake of an example, the amount of the defendant's wealth is proper to be considered, for what would be punishment to a poor person might be none at all to a wealthy one, and on the other hand, what would be light punishment for a wealthy person might be very heavy for a poor one. * * * "

"The relation of marriage is a sacred and important one and is the foundation of family life, and, hence, is of supreme importance in a state or country which protects the family status, such as in ours. For such an injury the law affords a remedy in damages and *where the injury is wanton, provides for exemplary or punitive damages,* as well as actual or compensatory damages. Actual or compensatory damages are the measure of the loss or injury sustained, and may embrace shame, mortification, humiliation, mental pain and suffering, and the like. Exemplary or punitive damages are something in addition to full compensation, not given as the plaintiff's due, *but given rather with a view to the enormity of the offense, to punish the defendant*

*and thus make an example of her so that others may be deterred from committing similar offenses. Exemplary or punitive damages are given only where the wrongful act is done with a bad motive, or is characterized by circumstances of aggravation, or in a manner so wanton or reckless as to manifest a wilful disregard of the rights of others.* Therefore, if from the evidence the jury believes that the defendant committed the wrongful acts complained of in reckless disregard of the rights of the plaintiff, or with a bad motive, the jury may, in addition to compensatory damages, award as exemplary or punitive damages such further sum as they may think right, in view of all the circumstances of the case, not exceeding the amount claimed in the complaint." (Italics mine).

Besides specific requests for a charge, plaintiff, by counsel, gave the court for its assistance a copy of the court's charge to the jury in the case of Williamson v. Osenton, the opinion of the court affirming judgment of which is reported in 4 Cir., 220 F. 653. On the subject of punitive damages, the court in the Osenton case, charged the jury as follows:

"Coming now to specific instructions applicable to this side of the case, I desire to say that while the law will protect against the knowing violation of the marital rights, I regard it as reasonably well settled by a concensus of the best considered opinions, *that punitive damages can only be given in the event that the jury believe from the evidence that the defendant is the active allurer or pursuer, responsible actively, for the wrong.* In other words, taking this case as an example, even though the jury may believe that the acts of adultery testified to were committed, *yet if they believe that they were the result of passion, and were not the result of allurement purposely held out by defendant, they would furnish no basis for punitive dam-*

*ages,* though they would for compensation.

"So, taking the first count, the mere giving of presents and the frequent association of defendant with plaintiff's husband, testified to by some of the witnesses, would furnish no basis for punitive damages, even though the jury should believe and find that these caused a lessening of that husband's affection for his wife, *unless the jury further believes that such presents were given and such association sought by the defendant with the design to allure the affection of plaintiff's husband away from the wife and to the defendant.* In other words, that no actionable malice can exist without some intent on the part of the defendant to procure the end that resulted.

*"Hence, if the jury should believe that unlawful relations existed between the defendant and C. W. Osenton but should further believe that they were brought about by his advances, no punitive damages could be found against defendant on that account."* (Italics mine).

I refused to charge the jury that they might award punitive damages, not primarily because punitive damages had not been prayed for in the complaint, but primarily because I was satisfied that the evidence did not justify an award of punitive damages against the defendant. The law as to punitive damages in a case of this character seems to be correctly stated in the requests of the plaintiff for a charge on this subject and in the charge given in the Osenton case.

The evidence has not been transcribed, but as I recall it, the evidence as to the relations of Colonel Frierson and Mrs. McIntyre, generally speaking, is quite meager.

As to the charge of criminal conversation or adultery by Colonel Frierson and the defendant, I am of the opinion that there was ample evidence for a finding by the jury that adultery took place on several occasions. Private detectives

testified to seeing this couple in a secluded spot in the woods, on three occasions, under circumstances which would justify the jury in concluding that adultery took place. A white woman and several colored people, resident in that neighborhood, testified to having seen this couple in that vicinity on several occasions, during a period of possibly as much as six months, prior to the occasion when plaintiff and her private detectives appeared upon the scene. However, there was no testimony whatever to indicate who was the seducer and who was the seduced. Of course, since they came in separate vehicles, with Mrs. McIntyre driving her own automobile, it is obvious that her meetings with Colonel Frierson were voluntary on her part, but there is no evidence to indicate that she lured the Colonel there, or in any way enticed him to meet her. There was undisputed evidence that, on one occasion during Colonel Frierson's stay in the Keswick neighborhood, after a dance at the Keswick Country Club, he undertook to rape a highly respectable young married lady, which fact, being related to her husband, resulted in her husband chasing the Colonel away from his home so hurriedly that he left his hat and ran his automobile into a ditch, where it remained until the following day. In view of this evidence, it seems at least equally probable, if not more so, that Colonel Frierson was the pursuer in his relations with Mrs. McIntyre.

Other than the testimony in regard to the adultery, I do not recall any testimony in regard to the relations of Colonel Frierson and Mrs. McIntyre, or their actions toward each other, except the testimony from which the jury might conclude that Mrs. McIntyre gave Colonel Frierson two pairs of expensive monogrammed pajamas. On the other hand, there was evidence, from which the jury might reasonably have concluded that during that period Colonel Frierson made expensive gifts of Tiffany jewelry to Mrs. McIntyre, to-wit, a pair of gold earrings valued at $220, a gold clip brooch at $200, and a gold aquamarine watch at $890.

It is true that Mrs. Frierson testified that her husband told her that there was a wealthy blond woman in love with him, and it might be assumed that he was referring to Mrs. McIntyre. However, hearsay evidence of statements made by Colonel Frierson were admitted, not to prove facts, but only for such bearing as such statements might have on the relationship existing between Colonel and Mrs. Frierson.

A number of witnesses for the defendant testified that she was a shy, demure young woman, with a husband and two nice children, definitely not the type who would be likely to persuade a man to commit adultery with her.

In contrast with the evidence as to the character and personality of Mrs. McIntyre, the evidence was undisputed that Colonel Frierson was an aggressive, domineering, brutal type. Plaintiff, Mrs. Frierson, admitted that, in the month of November, 1949, he set private detectives on her in New York, found her in the New York apartment of a man, physically attacked the man and denounced his wife in vile, profane terms. Mrs. Frierson also testified that he beat her brutally on her visit to Keswick, and Mrs. Barbin testified that she discharged him as a horse-trainer because of his uncontrollable temper and brutality to her horses.

In short, I was, and still am, satisfied that taking plaintiff's evidence as true, and considering all reasonable inferences therefrom, the evidence falls far short of establishing facts which would justify an award of punitive damages.

Coming now to defendant's motion, she moves that the verdict be set aside and judgment be entered for her, *non obstante veredicto*, or in the alternative that the verdict and judgment be set aside and a new trial as to all issues be granted her, upon the grounds:

"1. The verdict of the jury is contrary to the law and evidence and without evidence to support it.

"2. Admission in evidence over the objection and exception of the Defendant, of a newspaper picture

of Defendant and her husband, such evidence being of a harmful, prejudicial and inflammatory character, especially in a cause or action of the nature sued on.

"3. The verdict resulted from a misunderstanding and erroneous impression of the evidence and the law applicable thereto.

"4. The verdict resulted and is founded upon the false and perjured testimony of the plaintiff as follows: * * *

"5. Newly discovered evidence."

■ I do not think that the admission of the newspaper picture of defendant and her husband, on cross-examination of one of defendant's witnesses, was erroneous. The newly discovered evidence does not impress me as of sufficient moment to warrant setting aside the verdict.

. ■ However, defendant's motion to set aside the verdict as contrary to the law and the evidence and without evidence to support it, and further that the verdict resulted from a misunderstanding and erroneous impression of the evidence and law applicable thereto, raises an interesting question. I charged the jury that they might assess damages against the defendant for alienation of affections and criminal conversation, either or both. As I have said before, I am satisfied that the evidence was sufficient to justify a finding that criminal conversation had taken place on several occasions. And there was evidence from which the jury should have concluded that defendant made a present of two pairs of expensive pajamas to plaintiff's husband. However, the evidence seemed to me to clearly prove that at the time Colonel Frierson met defendant, he had little, if any, affection for the plaintiff, his wife. As previously pointed out, there is no evidence whatever to show any effort on the part of the defendant to woo plaintiff's husband or to induce him to commit adultery with her. Whether several acts of criminal conversation and the giving of one present, without more, is sufficient to justify a verdict for alienation of affections seems

to me quite doubtful. It would probably have been better had I taken separate verdicts from the jury as to alienation of affections and criminal conversation. It might well be that I erroneously charged the jury that they might find for the plaintiff on the charge of alienation of affections, as well as on the charge of criminal conversation. However, as I did not take separate verdicts, and as I feel that a verdict on the charge of criminal conversation was justified, I feel that I should presume that the verdict was based on a legally tenable basis and overrule defendant's motion to set aside the verdict on the ground that it was contrary to the law and the evidence and without evidence to support it, or based upon a misunderstanding or erroneous impression.

The fourth ground of defendant's motion also seems to me to be serious. Plaintiff sought to have the jury believe that, up until the time her husband came to Virginia in November 1950, she and her husband were a loving and affectionate couple, living together in happy domestic felicity. She testified that all during the year 1950, she and her husband were "perfectly happy". However, as previously mentioned, on cross examination she admitted that in November, 1949, her husband had put private detectives on her, caught her in the New York apartment of a married man, that he had attacked the man and reviled her, and that as a consequence she had driven him away from her mother's home, where they were then living, although he later apologized and came back to live with her. She also admitted that, in the Summer of 1950, she and her husband were contemplating a divorce, and Mrs. Barbin testified that when she discussed employment with Colonel Frierson at Harrisburg, Pennsylvania, just prior to his coming to Virginia, he told her that he was on the way to Reno to secure a divorce. Thus, it appears that the plaintiff, not only contradicted herself about her relations with her husband, but was contradicted by others.

However, since the credibility of witnesses and the weight to be given their testimony are matters for the jury, I do not feel that it is within my province to set aside the verdict of the jury by reason of the inconsistencies and contradictions in plaintiff's testimony.

Therefore, an order will be entered overruling the motions of both plaintiff and defendant, and exceptions will be noted.